UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
TAMME G. BOOTH,

                              Plaintiff,                      Case No. 7:22-cv-10114

    -against-                                       AMENDED
                                            COMPLAINT

NEW YORK PRESBYTERIAN HOSPITAL – BEHAVIORAL
HEALTH CENTER, DR. LAURA L. FORESE, PHILIP J. WILNER
SHAUN SMITH  and PHYLLIS CAPAIGHI                    Jury Trial Demanded
in their personal and professional capacities,

                            Defendants.
-------------------------------------------------------------------------------X

       The Plaintiff TAMME G. BOOTH by and through her attorneys, BERLINGIERI LAW,

PLLC, as and for her Complaint in this action against the Defendants NEW YORK

PRESBYTERIAN HOSPITAL – BEHAVIORAL HEALTH CENTER, DR. LAURA L.

FORESE, PHILIP J. WILNER, SHAUN SMITH and PHYLLIS CAPAIGHI in their personal

and professional capacities, respectfully alleges upon information and belief as follows:

## NATURE OF CASE

1.    This is a civil action for damages and equitable relief based upon willful violations that

Defendant committed of Plaintiff's rights guaranteed to her by federal and state law,

and complains for causes of action of: (i) discrimination based on religion under Title VII of

the Civil Rights Act of 1964, as codified, 42 U.S.C.§ 2000e *et seq.*, as amended ("Title VII");

(ii) retaliation under the Title VII; (iii)  discrimination based on religion and race under, Article

15 of the Executive law the New York State Human Rights Law ("NYSHRL") § 296, et seq.;

(iv) retaliation under NYSHRL; (v) aiding and abetting discrimination under NYSHRL; (vi)

for Violation of Free Exercise Religious Liberty under the First, Fifth and Fourteenth

Amendments of the United States Constitution pursuant to 42 U.S.C. §1983; (vii) for Violation

of the Equal Protection Clause under the Fifth and Fourteenth Amendment; (viii) Violation of the New York Constitution Art. I, Sec. 6 and 7, denial of due procedural and substantive due process; (ix) Violation of the New York Constitution Art. I, Sec.11, denial equal protection under the law.

Plaintiff seeks monetary relief including, but not limited to: compensatory and punitive damages; attorney's fees and the costs of this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

2.      Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction as this case involves a Federal Question under Title VII of the 1964 Civil Rights Act, 42 U.S.C.§ 2000e *et seq* as amended, 42 U.S.C. § 1983, the Constitution of the United States, 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

4.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under New York law and any and all state and local law pursuant to 28 U.S.C. §1367 (a).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b).  The acts and transactions complained of herein occurred in this District, Plaintiff resides and resided in this District during the course of her employment, and Defendant was and is located in this District.

6.      Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about April 25, 2022, against Defendant New York Presbyterian Hospital – Behavioral Health Center, (EEOC No. 525-2022-01767).

7.      On September 30, 2022, the EEOC, issued Plaintiff a Notice of Right to Sue annexed hereto as **Exhibit A**.

## THE PARTIES

8.        Plaintiff Tamme G. Booth was and is a Registered Nurse ("R.N.") was and is a resident of the State of New York at all relevant times herein resided in this District.

9.        Defendant New York Presbyterian Hospital – Behavioral Health Center ("NYP") is a behavioral healthcare center owned and operated by New York Presbyterian Hospital, located at 21 Bloomingdale Road, White Plains, NY 10605, with specialized programs created to meet the needs of adults, adolescents, and children from all backgrounds, offering services across the continuum of care, including inpatient, partial hospitalization within the District.

10.      Upon information and belief, at all times relevant to this Complaint, Defendant NYP maintained more than (15) employees.

11.      Upon information and belief, Defendant Dr. Laura L. Forese, M.D. ("Dr. Forese") was and is medical doctor and New York Presbyterian Hospital administrator holding the title of Executive Vice President and Chief Operating Officer and is a resident of the State of New Jersey and at all relevant times herein worked in this District.

12.      Upon information and belief, Defendant Phillip J. Wilner, M.D., ("Dr. Wilner") was and is medical doctor and NYP Behavioral Health Center administrator holding the title of Senior Vice President and Chief Operating Officer and is a resident of the State of New York at all relevant times herein resided and worked in this District and set policies for NYP.

13.      Upon information and belief, Defendant Shaun Smith, ("Mr. Smith") was NYP's Senior Vice President, Chief Human Resource Officer and currently holds the title of Group Senior Vice President, Chief People & Culture Officer and is a resident of the State of New York at all relevant times herein resided in this District.

14.      Upon information and belief, Defendant Phyllis Capaighi, ("Ms. Capaighi") was and a

3

registered nurse and a held a supervisory as patient care director ("PCD") and is a resident of the State of New York at all relevant times herein resided in this District.

15.    All defendants named above are collectively herein referenced as ("Defendants").

## BACKGROUND FACTS

16.    Plaintiff's race is Black / African American.

17.    Plaintiff is a registered nurse (R.N.).

18.    Plaintiff's religion is Christian.

19.    Plaintiff worked for Defendant NYP from on or about April 2, 2002 until her wrongful termination on or about September 23, 2021 as a R.N.

20.    Defendant NYP is a health care system that employs approximately 48,000 employees.

21.    In Westchester County alone the NYP hospital system includes Lawrence Hospital in Bronxville and Hudson Valley Hospital in Cortlandt Manor, as well as Westchester Behavioral Health Center in White Plains.

## Racial Discrimination, Failure to Promote and Plaintiff's Prior Complaints

22.    Throughout her career at NYP Plaintiff was denied advancement due to race and prior complaints of discrimination based on race.

23.    For example, in or around February 2021, Plaintiff filed a formal written complaint of racial discrimination and failure to promote due to race with NYP.

24.    Plaintiff sent an email with an attachment including her complaint to Mr. Smith in or around February 2021.

25.    Plaintiff explained in her complaint that in 2020 she was denied the role of Clinical Manager because her white employees within NYP administration chose a white

candidate for the position that Plaintiff sought and only interviewed Plaintiff for the appearance of diversity despite Plaintiff's qualifications for the position.

26. Specifically, Plaintiff went on several rounds of interviews in July, August and October of 2020.

27. Plaintiff was forced to interview with Ellen Brous (PCD) at the final interview on October 28, 2020 with the white candidate Cristy Murray ("Ms. Murray") was ultimately chosen over Plaintiff for the position.

28. Plaintiff became aware that the white candidate was preselected over Plaintiff even prior to the interviews, because on or around October 31 – November 1, 2020, Plaintiff's coworker a pysch-tech (male) informed Plaintiff that Senior Staff Nurse Stephanie Verdeflor ("Ms. Verdeflor") informed staff members (including the pysch-tech) that Plaintiff was not getting the job because Plaintiff had filed prior complaints of racial discrimination against employee Audrey Drucker ("Ms. Drucker").

29. In or around early November 2020, Plaintiff complained verbally to her supervisor Ms. Capaighi to inform her of Ms. Verdeflor's statements and that she was aware of NYP's preference for Ms. Murray.

30. Ms. Capaighi heard Plaintiff's complaint but stood there speechless and shocked, only to say to Plaintiff that "staff shouldn't be talking like that" referring to Ms. Verdeflor's statement that Plaintiff was not getting the job.

31. Ms. Capaighi then ridiculed Plaintiff for bringing this to her attention.

32. Ms. Capaighi then spoke on the phone with staff members regarding Plaintiff's complaint and informed staff members that communications regarding "candidates should not be

taking place."

33.   Ms. Capaighi did not discipline Ms. Verdeflor or report her misconduct to HR.

34.   Upon information and belief, Ms. Verdeflor should not have had knowledge of Plaintiff's prior complaints of harassment or discrimination against employees such as Ms. Drucker within NYP.

35.   Plaintiff did in fact file a prior complaint against Ms. Drucker several years prior to 2020.

36.   Ms. Verdeflor made the comments to staff that Plaintiff was not getting the job because upon information and belief NYP administrators Linda Espinoza and Ellen Brous sought to deny Plaintiff the role and instead give it to Ms. Murray because Plaintiff had made prior complaints of discrimination and because of Plaintiff's race.

37.   On November 20, 2020, NYP's HR department representative Sadia [last name unknown] called Plaintiff to inform her that another candidate was hired for the role Plaintiff had interviewed for.

38.   On or about December 14, 2020, Plaintiff suffered a small stroke at work due to increased blood pressure and was rushed to the emergency room at White Plains Hospital in ambulance from NYP.

39.   Plaintiff was seen at the hospital and released shortly after then spent a few days out of work to recover and returned to work approximately 4-5 days after her hospital visit.

40.   After NYP HR received Plaintiff's written Complaint of denial of advancement and discrimination citing the glass ceiling effect and career stagnation, NYP began to investigate Plaintiff's complaint in or around February 2021.

41.   Plaintiff spoke with an in-house NYP attorney as part of the investigation.

42.   Plaintiff provided NYP all the information that she could provide regarding the discrimination, failure to promote and the fact that her prior HR complaints were being used against her in seeking advancement within NYP.

43.   NYP made findings with respect to their investigation and found that it could not corroborate Plaintiff's concerns of racial discrimination.

44.   Upon information and belief NYP performed a botched investigation and did not interview all possible witnesses and did not consider Plaintiff's evidence that she was being deny advance based on her race and prior complaints.

45.   The NYP in-house counsel that interviewed Plaintiff called Plaintiff back a few weeks after their initial February 2021 call and reported that NYP could not substantiate Plaintiff's complaint.

46.   After Plaintiff's February 2021 complaint of discrimination based on race and prior complaints, NYP began to intentionally understaff Plaintiff's unit (4-N) as a form of retaliation.

47.   Plaintiff experienced material changes to her working conditions due to purposefully understaffing her unit after her complaint in February 2021.

48.   Plaintiff also began to notice an increase in so called diversity initiatives at NYP, however as a black female Plaintiff felt that NYP was paying more attention to the optics of the situation rather than how racism effected Plaintiff at NYP by denying her advancement in her career.

49.   Plaintiff was subjected to a hostile work environment based on her race and prior complaints.

**Plaintiff's  Request for Religious Accommodation, NYP's COVID-19 Vaccination Policy and Plaintiff's Termination**

50.     Plaintiff disclosed to Defendants that she was a person of faith.

51.     Plaintiff maintains sincerely held religious beliefs that do not allow her to be vaccinated.

52.     Plaintiff is unvaccinated from the COVID-19 virus (SARS-CoV-2)  and refuses to take the vaccine due to her sincerely held religious beliefs but would use a mask and submit to weekly testing as a feasible alternative, if required by the Defendants.

53.     On June 11, 2021, Defendant NYP became came the first health network in New York state to require its employees to receive the COVID-19 vaccines and announced that it would be mandating the COVID-19 vaccine for all of its employees and that non-vaccinated employees would be terminated by September 1, 2021.

54.     Defendant NYP's President Dr. Stephen Corwin and Dr. Forese sent a vaccine mandate notice to all employees including Plaintiff that stated among other things "We care for sick people – some critically so – every day, and we are responsible for their safety while in our care he stakes in this matter are high, and the evidence is clear that getting vaccinated against COVID-19 is the most important and responsible action we can take as NYP team members for the safety and well-being of our patients and visitors, our communities, and ourselves."

55.     The vaccine mandate notice went on to state ""Exemption requests will be carefully evaluated and accommodated, if appropriate. Those who are granted exemptions will be tested frequently for COVID-19."

56.     In or around a date between July 29, 2021 through August 4, 202, Plaintiff submitted her religious accommodation request through NYP's "VaxApp" submission portal.

57.    Upon information and belief Plaintiff used her NYP email credentials to sign in and upload her religious exemption request to the COVID-19 vaccine mandate.

58.    Upon information and belief Plaintiff received email confirmation that she had uploaded the exemption request to the VaxApp.

59.    On August 26, 2021, New York State announced it's "Prevention of COVID-19 transmission by covered entities" vaccine mandate [10 N.Y.C.R.R. § 2.61] that would apply to NYP as a "covered entity."

60.    NYP instituted a policy at the direction leadership including Dr. Forese, Dr. Wilner and Mr. Smith to institute a COVID-19 vaccine mandate for all workers, providing medical exemptions and requests for accommodations while not allowing for religious exemption or accommodation requests.

61.    After the August 26, 2021, mandate 10 N.Y.C.R.R. § 2.61 was announced, NYP then declined to take any religious accommodation requests, negated all requests, revoked all prior standing granted accommodations and upon information and belief purged and or deleted and or destroyed Plaintiff's and other employees religious accommodation requests for exemption to the vaccine mandate on their VaxApp system.

62.    NYP clearly acted in concert with the New York State Department of Health mandate under Prevention of COVID-19 transmission by covered entities" vaccine mandate [10 N.Y.C.R.R. § 2.61 which did not permit for religious accommodation to the vaccine requirement.

63.    The definition of "fully vaccinated" under 10 N.Y.C.R.R. § 2.61 is highly unclear and in the loosest meaning of the word as it states that fully vaccinated will be "determined by the Department [ NY Dept. of Health] in accordance with applicable federal guidelines

and recommendations."

64.    NYP had been delegated a public function by the state to implement the COVID-19 vaccine mandate as a covered entity.

65.    NYP sent Plaintiff several emails to her NYP email address informing her that she was not complaint with the vaccine requirement and that she must receive her first dose and become fully vaccinated or face termination.

66.    Upon information and belief at some point shortly after August 26, 2021, NYP revoked and rescind any standing religious exemptions and deleted Plaintiff's and other employees pending religious exemption requests from the VaxApp system acting under color of State law via the so called "Prevention of COVID-19 transmission by covered entities" vaccine mandate [10 N.Y.C.R.R. § 2.61].

67.    Plaintiff in her religious accommodation request for exemption to the COVID-19 vaccine mandate Plaintiff revealed that she had religious opposition to the vaccine because Plaintiff asserted that under her religious beliefs that her body is her temple and objected to the use of fetal cells lines in the development and manufacture of the COVID-19 vaccine and that she believes in the sanctity of life among other things.

68.    On or about September 14, 2021, Ms. Capaighi approached Plaintiff in a hostile manner to coerce her to take the COVID-19 vaccine because the deadline to do so was the following day September 15, 2021.

69.    Ms. Capaighi berated Plaintiff for remaining unvaccinated and told her that she was on the NYP non-compliant list.

70.    Plaintiff informed Ms. Capaighi of her religious objections to the vaccine and informed

her that she had uploaded her religious exemption documentation to the NYP VaxApp portal but have not heard a response.

71. On September 15, 2021, Plaintiff called out sick due to persistent headaches and elevated blood pressure.

72. On September 15, 2021, Ms. Capaighi contacted Plaintiff via text to inform Plaintiff that if she wished to return to work that she would need to have a negative COVID-19 PCR test.

73. Plaintiff tested negative for COVID-19, then contacted NYP's workforce health and safety and they cleared Plaintiff to be permitted to return to work on September 21, 2021.

74. Shortly being clear to return to work, Ms. Capaighi called Plaintiff to inform her that she must be vaccinated by September 23, 2021 and that Plaintiff was on the non-complaint list for the vaccine.

75. Despite already being informed that Plaintiff had submitted religious accommodation request to NYP through VaxApp, Ms. Capaighi questioned Plaintiff as to how and when Plaintiff submitted her religious accommodation request to NYP.

76. Nonetheless, Ms. Capaighi informed Plaintiff that she "would be considered resigned" by September 23, 2021 should Plaintiff remain unvaccinated.

77. Defendant failed to engage in an interactive process with Plaintiff prior to denying Plaintiff's religious exemption requests for accommodation.

78. Plaintiff engaged in protected activity when she complained to Defendants directly after the denial of her religious accommodation request.

79. Defendants failed to reconsider Plaintiff's request.

80.    Defendants had no equitable due process to determine Plaintiff's request for religious exemption.

81.    Defendants acted arbitrarily and capriciously when they chose to deny Plaintiff's religious accommodation request, when based off the information they had could have easily granted it if they chose to do so.

82.    Defendants' COVID-19 vaccination mandate did not achieve its desired effect of protecting NYP's patients and employees because the vaccines do not stop the transmission or spread of the COVID-19 virus.

83.    Current guidance from the U.S. Centers for Disease Control treats vaccinated and unvaccinated the same, there are no mandated quarantine periods, unvaccinated and vaccinated individuals according to the CDC should wear masks indoors if COVID-19 infections are prevalent in the local area, among many other guidelines that show that while perhaps well-meaning, the NYP mandate did not serve its stated purpose, rather resulted in Plaintiff's inability to continue employment at NYP due to Defendants' hyperbolic and wholly unfounded fear of having Plaintiff in as an unvaccinated employee.

84.    Defendants were hostile to Plaintiff on the basis of her religious beliefs.

85.    Defendant terminated Plaintiff on September 23, 2021 for non-compliance with its COVID19 vaccination policy.

86.    It should be noted that on January 13, 2023, a New York State Supreme Court in Onondaga, County struck down 10 N.Y.C.R.R. § 2.61 when deciding an Article 78 petition challenge to brought by a group of impacted healthcare workers and medical doctors against the State of New York Department of Health Commissioner Mary Bassett, Governor Kathleen C. Hochul and The New York State Department of Health, for the

August 26, 2021 "Prevention of COVID-19 transmission by covered entities" vaccine mandate [10 N.Y.C.R.R. § 2.61].

87.    The Court found that 10 N.Y.C.R.R. § 2.61 was unlawful, beyond the scope of the New York State Health Department's authority and arbitrary and capricious and otherwise not in accordance with the law. (*Medical Professionals for Informed Consent et al. v Bassett et al.* N.Y. Supreme Court, Onondaga County - Index No: 008575/2022, *Neri, J.*).

88.    The Court in analyzing the validity of the final rule for the vaccine mandate [10 N.Y.C.R.R. § 2.61] agreed with the Petitioners that there was no **rational basis** for the mandate because even "***the New York State Health Department acknowledges that the mandated vaccine fails to accomplish its stated goal, i.e. prevent the spread of COVID-19***" (*Id.* at pg. 5)(emphasis in orginal).

89.    The Court ordered that "10 N.Y.C.R.R. § 2.61 is *ultra vires*, preempted by state law, null and void and/or unenforceable, and awarding Petitioners reasonable attorney's fees, costs, and disbursements pursuant to CPLR § 81010, and any other applicable statutory, common law or equitable provision because any **defense to the validity of the mandate is without merit**." (*See Id.* at pg. 1-2).

90.    The Court ruled that "the Mandate, 10 N.Y.C.R.R. § 2.61, is beyond the scope of Respondents' authority and is therefore null, void, and of no effect, and Respondents, their agents, officers, and employees are prohibited from implementing or enforcing the Mandate." (*See Id.* at pg. 10).

91.    The Court noted that "In true Orwellian fashion, the Respondents [State of New York, Health Commissioner] acknowledge then-current COVID-19 shots do not prevent transmission." (*See Id.* at pg. 11).

92.   The Court noted that New York State Department of Health's special expertise in regulation of public health was not utilized as "the COVID-19 shots do not prevent transmission." (*See Id.* at pg. 11).

93.   At the time of this filing, New York State is appealing the January 13, 2023 decision striking down vaccine mandate 10 N.Y.C.R.R. § 2.61 to the New York Appellate Division Fourth Department.

94.   NYP's enforcement of the illegitimate vaccine mandate against Plaintiff in September 2021, as basis for her termination despite her religious accommodation is unlawful.

95.   NYP is a top rated health system and upon information and belief had professionally trained and qualified experts within the organization that knew or should have known that the COVID-19 vaccines were medically ineffective and did not work as promoted (i.e. preventing contraction of and transmission of COVID-19).

96.   On September 15, 2021, former New York State Governor Andrew Cuomo, acknowledged that the State of New York would not provide a religious exemption / accommodation to 10 N.Y.C.R.R. § 2.61 and that "We [State of New York] left off that [religious accommodation] intentionally, and we believe that there, this is my personal opinion, because I'm going to, you know, we'll be defending this in court ... I'm not aware of a, sanctioned religious exemption from any organized religion … everybody from the Pope on down is encouraging people to get vaccinated." (*See Id.* at pg. 5), (Transcript excerpts of Governor's comments, September 15, 2021 on vaccine mandate.)

97.   NYP and its leadership including Dr. Forese, Dr. Wilner and Mr. Smith took direction from Governor Cuomo and the New York State Department of Health in defending their action deny requests for religious accommodation to the mandate, including Plaintiff's.

98. NYP failed to adhere to Title VII and the NYSHRL when it chose not to accept religious exemptions / accommodation requests from employees after the announcement of 10 N.Y.C.R.R. § 2.61.

99. NYP granted medical exemptions for certain employees, however it discriminated against individuals such as Plaintiff who sought religious accommodations to NYP's mandate.

100. NYP's leadership including Dr. Forese, Dr. Wilner and Mr. Smith chose to institute a policy to terminate non-vaccinated employees regardless of their requests for religious accommodation, in light of the 10 N.Y.C.R.R. § 2.61, which on its face does not accomplish its stated goal of stopping transmission of COVID-19 and is not rationally related to a legitimate governmental interest and was clear at its inception that 10 N.Y.C.R.R. § 2.61 would cause employers including NYP to violate the religious rights and freedoms under the Constitution and Title VII.

101. Dr. Forese, Dr. Wilner and Mr. Smith chose to terminate Plaintiff's employment rather than accommodating her religious exemption request to the vaccine mandate in clear violation of Title VII and NYSHRL.

102. NYP acted under color of state law and violated Plaintiff's rights to religious freedom.

103. Defendants were encouraged sufficiently by the government, and Defendants were jointly involved with the government, in sufficiently significant ways by enforcing the mandate by terminating Plaintiff's employment, to warrant that the state action doctrine be applied. Defendants had additional reasons beyond the 10 N.Y.C.R.R. § 2.61 mandate, because prior to the implementation of the mandate on August 26, 2021 NYP was encouraging its employees to be vaccinated and expressed intent not to honor religious accommodation requests. The enforcement of 10 N.Y.C.R.R. § 2.61 by NYP demonstrates joint activity

between the government and Defendants, such that there was sufficient nexus between the state and the actions of the Defendants and such that there was pervasive public entwinement in Defendants' management or control as pertains to the NYP mandate and removal of religious exemption from its policy after August 26, 2021.

104.  NYP took direction from the State of New York when assessing their COVID-19 policy post August 26, 2021 in light of the implementation of 10 N.Y.C.R.R. § 2.61 and the New York State Department of Health purposeful exclusion of religious exemptions or accommodations from 10 N.Y.C.R.R. § 2.61 but allowing for medical exemptions to the mandate.

105.  NYP was a covered entity under 10 N.Y.C.R.R. § 2.61 and its action to terminate Plaintiff was under color of state law  because there was significant state involvement in the action.

106.  Presently, President Joseph R. Biden, Jr. has announced a planned to the COVID-19 public health emergency pandemic authorizations in May 2023 in the United States.

107.  Locally, the Mayor of the City of New York, Mayor Eric Adams announced that the City of New York will end its vaccine requirement for all City workers on February 10, 2023.

108.  NYP has failed to offer reinstatement of employment to Plaintiff or other similarly impacted workers who were terminated for non-compliance with the  10 N.Y.C.R.R. § 2.61, despite their religious accommodation requests.

109.  COVID vaccines were intended to protect against the original strain.

110.  Vaccines do not provide protection against the current strain; which has mutated numerous times and will continue to do so.

111.   Infected individuals—whether vaccinated or not—transmit Virus to others.

112.  No current Vaccine can prevent the transmission of the COVID-19 virus or variant.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

113.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

114.    Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hireor to discharge any individual, or otherwise to discriminate against any individual with respect toher compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

115.    Defendant the employer Defendants engaged in unlawful employment practices prohibitedby 42 U.S.C. §2000e et seq., by allowing discrimination based on religion and causing a hostile work environment.

116.    The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

117.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

118.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides thatit shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of her employees . . . because [s]he has opposed any practice made an unlawful employment practiceby this subchapter, or because [s]he has made a charge, testified, assisted or participated

in any manner in an investigation, proceeding, or hearing under this subchapter."

119.    The employer Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of the employer Defendants.

120.    The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AND FOR THE THIRD CAUSE OF
ACTION DISCRIMINATION UNDER
NEW YORK STATE HUMAN RIGHTS LAW
(AGAINST ALL DEFENDANTS)**

121.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above withthe same force and effect as if more fully set forth herein.

122.    Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

123.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff based on religion, requests for religious accommodation, race and prior complaints.

124.    Plaintiff hereby makes a claim against all Defendants under all of the applicable paragraphs of Executive Law Section 296.

125.    Plaintiff seeks damages as a result of Defendants' unlawful conduct.

**AS AND FOR THE FOURTH CAUSE OF ACTION
NEW YORK STATE HUMAN RIGHTS LAW**

**(AGAINST ALL DEFENDANTS)**

126.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above withthe same force and effect as if more fully set forth herein.

127.  New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

128.  Defendants engaged in an unlawful discriminatory practice by creating a hostile work environment based on race and religion and wrongfully retaliating against Plaintiff.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER**
**NEW YORK STATE HUMAN RIGHTS LAW**
**(AGAINST ALL DEFENDANTS)**

129.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

130.  New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

131.  Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**FOR VIOLATION OF RELIGIOUS LIBERTY UNDER THE FIRST, FIFTH AND**
**FOURTEENTH AMENDMENTS**
**PURSUANT TO 42 USC §1983 - U.S. CONSTITUTION)**
**(FREE EXERCISE)**

132. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

133. There are limited instances where a private party can be considered a state actor: "For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate" ("the public function test"). *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008), *quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 148 L.Ed.2d 807 (2001).

134. Defendants, as a state actor, have imposed an unconstitutional burden on Plaintiff's exercise of religion through their imposition of the vaccine mandate. The burden imposed on Plaintiff's exercise of religious is substantial, in that the Defendants' mandate discriminates against Plaintiff because of her religion, has caused severe economic distress on Plaintiff and continues to cause Plaintiff enduring mental anguish and emotional distress concerning proximately caused by the Defendant NYP's mandate.

135. The mandate is not neutral to religion and is not generally applicable in that it favors individuals with requests for medical accommodations for exemption to the mandate but does not provide for religious accommodation.

136. Defendant NYP was provided significant encouragement from New York State Department of Health to vaccinate all employees and deny all religious accommodation requests and NYP acted

as a willful participant in joint activity with the state, and the NYP's functions were entwined with state policies.

137. Defendant NYP had been delegated a public function by the state in enforcing the vaccine mandate 10 N.Y.C.R.R. § 2.61 with no religious exemption/accommodation.

138. Defendant NYP worked in concert with New York State in enforcing vaccine mandate 10 N.Y.C.R.R. § 2.61 by terminating Plaintiff's employment without regard to her requests for religious exemption to the COVID-19 vaccine policy.

139. Accordingly, the First, Fifth and Fourteenth Amendments require that Defendants compensate them for any and all damages including compensatory damages, back and front pay, reputational damages, damages for emotional trauma and distress, punitive damages, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### FOR VIOLATION OF THE FIFTH AND FOURTEENTH AMENDEMENT'S EQUAL PROTECTION CLAUSE

140. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

141.  Defendant NYP acted entwined with the New York State Department of Health to implement 10 N.Y.C.R.R. § 2.61 and not provide religious accommodation exemptions to Plaintiff and other similarly situated employees but grant medical accommodation requests.

142. At all relevant times Defendant NYP's actions were taken under color of state law.

143. Defendant NYP acting as an agent, arm, and effectively a department of the New York State Department of Health with tasks to perform, targeted a class of persons.

144. Defendant NYP choice not to accept or engage in an interactive process with Plaintiff and other similarly situated individuals who submitted religious accommodation requests, but to grant medical exemption requests at the direction of the New York State Department of Health without

regard to Plaintiff's rights under the Constitution and Title VII violates the Equal Protection Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

145. The process utilized by Defendants to deny all legitimate religious exemptions, while under Title VII must satisfy the unduly burdensome test, must under an equal protection challenge satisfy the much more difficult business necessity test.

146. Under strict scrutiny, it also must be very narrowly tailored or the least restrictive means for achieving the compelling objective.

147. Even under the rational basis standard, the targeting of one industry (healthcare) for denial of religious accommodation is not rational.

148. As described by Judge Ralph Porzio, referring to "a different decision for similarly situated people based on identical facts," in ordering the reinstatement of New York City sanitation workers: "There is nothing in the record to support the rationality of keeping a vaccination mandate for public employees, while vacating the mandate for private sector employees or creating a carveout for certain professions, like athletes, artists, and performers. *Garvey v City of New York*, 2022 NY Slip Op 22335 (Sup Ct, Richmond County, Porzio, J.).

149. By failing to consider reasonable religious accommodations, Defendants have deprived Plaintiff of their constitutionally protected rights to equal protection and religious exercise.

150.  Defendants have engaged in overt acts to deprive Plaintiff of her civil rights by failing to engage in the interactive process and terminating Plaintiff's employment.

151. Classifications that "impinge upon the exercise of a fundamental right" are "presumptively invidious" and subject to strict scrutiny. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

152. "A statutory classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right." *Nordlinger v Hahn,* 505 U.S. 1, 10 (1992).

153. Defendants' actions in denying the religious exemptions deprive Plaintiff of the equal protection of the laws guaranteed by the United States Constitution.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
## FOR VIOLATION OF THE NEW YORK CONSTITUTION ARTICLE I, §6-7

154. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

155. Under NY Constitution Article I, §6 the state may not infringe on certain enumerated rights.

156. Under NY Constitution Article I, §7 no person may be deprived of life, liberty, or property without due process of the law.

157. Defendants violated Plaintiff's right to religious liberty and violated NYSHRL by discriminating on the basis of religion when they denied Plaintiff's religious accommodation request and refused to permit religious accommodations due to 10 N.Y.C.R.R. § 2.61.

158. Plaintff had a property interest in continued employment. Respondents violated Petitioner's substantive due process rights.

159. The 10 N.Y.C.R.R. § 2.61 vaccine mandate was not reasonably related the ends sought to be achieved.

160. Defendants' vaccine mandate constitutes a deprivation of property under due process of law.

161. Being vaccinated does not prevent an individual from contracting or transmitting Covid-19.

162. Defendants denied Plaintiff her rights under NY Constitution Article I, §7.

## AS AND FOR THE NINTH CAUSE OF ACTION
## FOR VIOLATION OF THE NEW YORK CONSTITUTION ARTICLE I, §11 FOR
## EQUAL PROTECTION UNDER THE LAW

163.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this
      complaint.

164.  Under the NY Constitution Article 1, §11 "No person shall be denied the equal protection of the
      laws of this state or any subdivision thereof.

165.  Defendants violated Plaintiff's right to religious liberty and violated NYSHRL when they denied
      Plaintiff's religious accommodation request due to 10 N.Y.C.R.R. § 2.61.

166.  Plaintiff as in individual seeking a religious accommodation in the form of an exemption to the
      COVID-19 vaccine mandate was treated differently than individuals seeking medical exemption
      to the COVID-19 vaccine mandate under NYP's enforcement of 10 N.Y.C.R.R. § 2.61.

167.  Being vaccinated does not prevent an individual from contracting or transmitting Covid-19.

168.

169.  Defendants denied Plaintiff her rights for equal protection under NY Constitution Article I, §11.

### DEMAND FOR A JURY TRIAL

170.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on
       all claims in this action.

### PRAYER FOR RELIEF

        WHEREFORE, Plaintiff demands judgment against Defendant as follows:

        A.      A judgment declaring that the practices complained of herein are unlawful and

inwillful violation of the aforementioned federal; and state laws;

        B.      Awarding Plaintiff compensatory damages;

        C.      Awarding Plaintiff punitive damages;

D.      Awarding Plaintiff costs and disbursements incurred in connection with this action,including reasonable attorneys' fees, expert witness fees, and other costs;

E.      Pre-judgment and post-judgment interest, as provided by law; and

F.      Granting Plaintiff further relief as this Court finds necessary and proper.

Dated: New York, New York
       February 8, 2023

Respectfully submitted,

By: *Christopher J. Berlingieri*
CHRISTOPHER J. BERLINGIERI, ESQ. (CB1988)
BERLINGIERI LAW, PLLC
Attorney for Plaintiff
244 Fifth Avenue, Suite F276
New York, New York 10001
Tel.:   (347) 766-5185
Fax:    (914) 730-1044
Email: cjb@nyctlaw.com

# EXHIBIT A

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Tamme G. Booth**<br>**127 Creekside Circle**<br>**SPRING VALLEY, NY 10977** | From:   **New York District Office**<br>**33 Whitehall St, 5th Floor**<br>**New York, NY 10004** |

| EEOC Charge No.<br>**520-2022-01767** | EEOC Representative<br>**Ashraf Ahmed,**<br>**Sr. Federal Investigator** | Telephone No.<br>**9295065298** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

> The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Timothy Riera
09/30/2022

Enclosures(s)

**Timothy Riera**
**Acting District Director**

cc:   **Liza Velazquez**
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
**1285 AVENUE OF THE AMERICAS FL 29**
**New York, NY 10019**
**Emily Vance**
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
**1285 AVENUE OF THE AMERICAS FL 29**
**New York, NY 10019**