USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAMME G. BOOTH,

                  Plaintiff,

  -against-

NEW YORK PRESBYTERIAN HOSPITAL—
BEHAVIORAL HEALTH CENTER, DR. LAURA
L. FORESE, DR. PHILIP J. WILNER, SHAUN
SMITH, and PHYLLIS CAPAIGHI in their personal
and professional capacities,

                  Defendants.

No. 22-CV-10114 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Tamme G. Booth ("Plaintiff") brings this action against New York Presbyterian Hospital — Behavioral Health Center ("NYP"), Dr. Laura L. Forese, Dr. Philip J. Wilner, Shaun Smith, Phyllis Capaigihi ("Defendants") asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII")' New York State Human Rights Law ("NSYHRL") § 296, *et seq.*; the First, Fifth, and Fourteenth Amendments of the United States Constitution; and Article I of the New York Constitution. Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

    For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

    The following facts are drawn from Plaintiff's Amended Complaint ("AC," ECF No. 12) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

Plaintiff is a registered nurse of Black descent and Christian faith, and was employed by NYP from April 2002 until September 2021. (AC ¶¶ 16-19). Defendants were aware of Plaintiff's faith. (*Id.* ¶ 50).

## I.   Failure to Promote & Racial Discrimination

Plaintiff went through several rounds of interviews for a Clinical Manager position throughout July, August, and October 2020. (*Id.* ¶ 26). Her final interview for the position occurred on October 28, 2020. (*Id.* ¶ 27). A few days later, a colleague informed Plaintiff that a senior staff nurse had stated Plaintiff was not selected for Clinical Manager because Plaintiff previously filed a racial discrimination complaint. (*Id.* ¶ 28). In November 2020, Plaintiff raised this incident to Defendant Capaighi, who responded "'staff shouldn't be talking like that' . . . ." (*Id.* ¶¶ 29-30). Defendant Capighi later informed NYP staff not to discuss candidates for open positions. (*Id.* ¶ 32). The senior staff nurse who alleged that Plaintiff was passed over because of her prior complaints was not disciplined. (*Id.* ¶ 36). Plaintiff was informed she was not selected for the role on November 20, 2020. (*Id.* ¶ 20).

In approximately February 2021, Plaintiff filed a formal written complaint accusing NYP of racial discrimination and failure to promote due to race. (*Id.* ¶ 23). That complained alleged Plaintiff "was denied the role of Clinical Manager because her white employe[r]s within NYP administration chose a white candidate for the position . . ." and that Plaintiff was only interviewed for the appearance of diversity in the process. (*Id.* ¶ 25). NYP's Human Resources department began investigating Plaintiff's complaint that same month, with Plaintiff actively cooperating. (*Id.* ¶¶ 40-42). The investigation concluded that Plaintiff's complaint was uncorroborated and unsubstantiated. (*Id.* ¶¶ 43, 45).

Following Plaintiff's February 2021 complaint, her unit was consistently understaffed to the extent that her working conditions were materially changed. (*Id*. ¶¶ 46-47). Plaintiff asserts this challenging work environment was based on her race and prior complaints. (*Id*. 49).

II.     **Request for Religious Accommodation & Subsequent Termination**

Plaintiff has sincerely held religious beliefs that prevented her from receiving the COVID-19 vaccine. (*Id*. ¶¶ 51-52). On June 11, 2021, NYP instituted a mandate requiring its employees take the COVID-19 vaccine or otherwise face termination. (*Id*. ¶ 53). This mandate contemplated exemptions to the policy, with exempted employees to be subject to frequent testing. (*Id*. ¶ 55). Plaintiff submitted a religious accommodation request seeking to exempt her from NYP's mandate in summer 2021. (*Id*. ¶¶ 56-59).

Following Plaintiff's submission, New York State instituted its own mandate—codified at 10 N.Y.C.R.R. § 2.61 ("Section 2.61")—requiring employees of "covered entities" to receive the COVID-19 vaccine, without contemplating religious accommodation requests. (*Id*. ¶¶ 59-60, 96). NYP was a "covered entity" within the meaning of Section 2.61. (*Id*. ¶ 59) Consequently, NYP declined to take any further religious accommodation requests, denied outstanding requests, and revoked previously granted accommodations. (*Id*. ¶ 61).

Following the implementation of Section 2.61, Plaintiff was repeatedly warned she was not compliant with the COVID-19 vaccine requirements. (*Id*. ¶ 65). Defendant Capaighi approached Plaintiff in September 2021 regarding her vaccination status, reprimanded Plaintiff for her failure to get vaccinated, and informed Plaintiff she was on the non-compliant list. (*Id*. ¶¶ 68-69). Plaintiff responded with her religious objections to the vaccine and reiterated that she had submitted a request for religious exemption prior to the implementation of Section 2.61. (*Id*. ¶ 70).

The day after this discussion, Plaintiff called out sick for an illness unrelated to COVID-19 but was told that she must test negative before returning to work. (*Id*. ¶¶ 71-72). Plaintiff did test negative and was permitted to return. (*Id*. ¶ 73). However, Plaintiff was again informed by Defendant Capaighi that she was non-compliant with the vaccination requirements and must be vaccinated by September 23, 2021. (*Id*. ¶ 74). Plaintiff was also told that failure to get vaccinated would constitute her resignation from NYP. (*Id*. ¶ 76). Accordingly, Plaintiff was terminated on September 23, 2021 because of her failure to comply with Section 2.61. (*Id*. ¶ 85).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on approximately April 25, 2022 and received a Notice of Right to Sue on September 30, 2022. (*Id*. ¶¶ 6-7).

## PROCEDURAL HISTORY

Plaintiff commenced this action against Defendants on November 29, 2022. (ECF No. 1.) Plaintiff was granted leave to file an Amended Complaint on December 8, 2022, (ECF No. 4), and a subsequent extension to file that Amended Complaint. (ECF No. 9). Plaintiff filed an Amended Complaint on February 9, 2023. (AC, ECF No. 12).

Subsequently, the parties filed a fully briefed motion to dismiss on August 8, 2023. (ECF Nos. 32-35). Those submissions include Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs. Mem.", ECF No. 33); Plaintiff's Opposition to Motion to Dismiss ("Pl. Opp.", ECF No. 34); and Defendants' Reply in Support of Motion to Dismiss (ECF No. 35). Defendants also filed a Notice of Supplemental Authority on November 30, 2023. (ECF No. 36).

**LEGAL STANDARD**

I.      **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**DISCUSSION**

Plaintiff alleges nine causes of action against Defendants: unlawful discrimination and unlawful retaliation under both Title VII and NYSHRL; unlawful aiding and abetting under NYSHRL; violation of religious liberty under the First, Fifth, and Fourteenth Amendments of the United States Constitution and Article I of the New York State Constitution; and violation of equal protection under the Fifth and Fourteenth Amendments of the United States Constitution and Article I of the New York State Constitution.

I.      **Title VII Claims and their New York State Analogues**

Plaintiff brings the following claims under Title VII and its New York State analogues: unlawful discrimination, unlawful retaliation, and creating a hostile work environment. (AC ¶¶

113-128). The Court notes that Plaintiff can only raise religious discrimination claims under Title VII because her allegations of racial discrimination arise from events that occurred in 2020 and up to February 2021. (See AC ¶¶ 22-49). Such claims are well outside the 300-day window New York residents are afforded to file a charge of discrimination with the EEOC and are therefore time-barred. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Torrico v. International Business Machines Corp.*, 319 F. Supp.2d 390, 401-402 (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999)).

Generally, Title VII and NYSHRL claims are subject to identical analyses and addressed together. *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp.3d 309, 323-34 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019); *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp.3d 396, 403 n.4 (S.D.N.Y. 2014) (stating that the analyses and standards of liability under Title VII and the NYSHRL are "identical"). The Court will now address each of Plaintiff's Title VII claims, and the respective state law analogues, in turn.

a. **Religious Discrimination Claims**

Plaintiff's first cause of action alleges unlawful religious discrimination under Title VII and her third cause of action alleges the same under NYSHRL. (AC ¶¶ 113-16, 121-25).

For a claim of religious discrimination to survive a motion to dismiss, a plaintiff must plausibly allege: (1) the employer discriminated against him (2) because of his religion. *Lowman v. NCI LLC*, 821 Fed. App'x 29, 31 (2d Cir. 2020) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). Though a low bar, the plaintiff's claims must still be plausible. *Id*. That is, the plaintiff must plausibly allege they "actually require[] an accommodation of [their] religious practice and the employer's desire to avoid the prospective accommodation [was] a motivating factor in [an employment] decision." *Id*. (quoting *E.E.O.C. v.*

6

*Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773-74 (2015)) (internal quotations omitted). An employer does not violate Title VII, however, if the accommodation amounts to an undue hardship. *Id*. (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002); *see also* 42 U.S.C. § 2000e(j).

Defendants raise numerous arguments, including that Plaintiff's religious beliefs fail to conflict with an "employment requirement" and that Plaintiff's termination was not taken "because of" her religious beliefs. (Defs. Mem. pp.10-12). Most persuasive are Defendants' arguments that accommodating Plaintiff's request would constitute an undue hardship for NYP. (*Id*. pp.12-15).

Defendants argue two bases that Plaintiff's requested accommodation constitutes an undue hardship. (*Id*. pp.12-15) The Court will only consider the first, however, as it is sufficient: Defendants contend that granting Plaintiff's accommodation would violate state law. (*Id*. pp.12-14). The Second Circuit has held that an accommodation requiring an employer to violate federal law constitutes an undue hardship. *See Lowman*, 821 Fed. App'x at 32-32 (2d Cir. 2020) (summary order). Pertinently, the Second Circuit and other courts in this District and in the Eastern District have decided identical requests for an accommodation exempting individuals from the Section 2.61 vaccination requirement would violate state law and thus constitutes an undue hardship. *See D'Cunha v. Northwell Health Systems*, 23-476-cv, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, 2023 WL 3467143, at *6 (S.D.N.Y. May 15, 2023); *Shahid-Ikhlas v. New York & Presbyterian Hosp., Inc.*, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023); *Marte v. Montefiore Med. Ctr.*, 2022 WL 7059182 at *Does 1-2 v. Hochul*, 632 F. Supp.3d 120, 145 (E.D.N.Y. 2022).

7

Plaintiff attempts to rely on *We The Patriots USA, Inc. v. Hochul* for the proposition that while Section 2.61 does not provide for religious *exemptions*, Defendants were still required to provide Plaintiff a religious *accommodation* under Title VII. (Pltf. Opp. p.9). In *We The Patriots USA, Inc.*, the Second Circuit noted that Section 2.61 did not bar employers from providing employees with religious accommodations that comport with the requirements of Title VII. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d Cir. 2021). The Second Circuit later clarified that such an accommodation would need to be structured such to bring the relevant employee outside Section 2.61's definition of "personnel". *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021) (hereinafter, "*We The Patriots* II"). Section 2.61 defines "personnel" as anyone who works at NYP and "engages in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61(a)(2).

Here, Plaintiff requested a blanket exemption from the vaccine requirement (AC ¶¶ 57, 67). If granted, the exemption would not remove Plaintiff from within the meaning of "personnel" as defined by Section 2.61 and thus would run afoul of an acceptable accommodation as contemplated in *We The Patriots* II. *We The Patriots II*, 17 F.4th at 370. In light of the foregoing, the Court accords with the 2d Circuit in both *D'Cunha* and *We The Patriots* II and holds that to grant such an exemption would constitute an undue hardship because it would require NYP violate a state law, Section 2.61. *See D'Cunha*, 2023 WL 7986441, at *2; *We The Patriots* II, 17 F.4th at 370. Consequently, Plaintiff's religious discrimination claims under Title VII and NYSHRL are dismissed.

8

### b. Retaliation Claims

Plaintiff alleges unlawful retaliation under Title VII in her second cause of action and under NYSHRL § 296(7) in her fourth. (AC ¶¶ 117-20, 126-28). As with the prior claim, the Court will address these allegations only as to unlawful retaliation on a religious basis.

To establish a *prima facie* case under Title VII and NYSHRL, a plaintiff must show: (1) that she participated in a protected activity; (2) the defendant knew of the protected activity; (3) she suffered an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Dotson v. City of Syracuse*, 688 Fed. App'x 69, 72 (2d Cir. 2017) (summary order); *Shake Shack Enterprises, LLC*, 473 F. Supp.3d at 330. At the motion to dismiss stage, the plaintiff need only plausibly allege that: (1) defendants discriminated or took an adverse employment action against her because (2) she opposed any unlawful employment practice. *DeJesus v. Bon Secours Community Hospital*, 23 CV 806 (VB), 2024 WL 554271, at *7 (S.D.N.Y. Feb. 12, 2024) (quoting *Shake Shack Enterprise, LLC*, 473 F. Supp.3d at 331).

A "protected activity" is any "action taken to protest or oppose statutorily prohibited discrimination." *Shake Shack Enterprises, LLC*, 473 F. Supp.3d at 331 (quoting *Wright v. Monroe Cmty. Hosp.*, 493 Fed. App'x 233, 236 (2d Cir. 2012) (summary order)). A complaint that an employer has engaged in unlawful discrimination is "virtually always . . . opposition to that activity." *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015)). A complaint may be formal or informal. *Id.* (collecting cases). A complaint must be made in good faith and with a reasonable basis that the employee was protesting an unlawful employment practice. *Id*. (quoting *Gratton v. Jetblue Airways*, No. 04 Civ. 7561(DLC), 2005 WL 1251786, at *10 (S.D.N.Y. May 25, 2005)).

The Court's finding that NYP terminated Plaintiff so as to conform with Section 2.61 severs any possible causal connection between her termination and her request for a religious exemption from Section 2.61's vaccination mandate. In other words, seeking to come into compliance with law by terminating Plaintiff was not an unlawful employment practice. Therefore, Plaintiff's religious retaliation claims under Title VII and NYSHRL are claims are dismissed.

### c. Hostile Work Environment Claims

Plaintiff's final Title VII, and its New York State analogue, claim is for creating a hostile work environment. (AC ¶ 115, 128).

To sustain a hostile work environment claim, plaintiffs are required to "establish both objective and subjective elements." *Moll v. Telesector Resources Group, Inc.*, 94 F.4th 218, 228-29 (2d Cir. 2024). As to objectivity, a reasonable person must find the misconduct "severe or pervasive enough to create an objectively hostile or abusive work environment . . . ." *Id*. at 229 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The plaintiff must also "subjectively perceive the environment to be abusive." *Id*. (cleaned up).

"Whether a particular environment is objectively hostile or abusive can be determined only be looking at *all* the circumstances." *Id*. (emphasis in original) (cleaned up). While no single factor is necessary, courts are directed to consider

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id*. The inquiry is not a "mathematically precise test", nor is there a "threshold . . . number of incidents" necessary to make out a claim. *Id*. The "crucial inquiry", then, "focuses on the *nature of the workplace environment as a whole* . . . ." *Id*. (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) (emphasis in original).

Plaintiff's allegations of hostile work environment premised on her religious objection to the COVID-19 vaccine fail. First, the frequency of the alleged discriminatory conduct is meager. Defendants were initially willing to consider religious exemptions under their own policy prior to it being superseded by Section 2.61. (AC ¶¶ 55, 60). Plaintiff then only alleges email requests and two face-to-face incidents where she was urged by superiors to take the vaccine (*Id*. ¶¶ 68, 74). The severity is also limited, as Defendants' main concern was to comply with Section 2.61 and not based on hostility towards Plaintiff. (*See Id*. ¶ 74 (stating that Plaintiff was informed she was non-compliant with Section 2.61's mandate)).

In fact, Plaintiff makes no allegations at all that the friction she experienced with Defendants was based on her religious beliefs. As already discussed, Defendants were obligated by law to ensure that the employees covered by Section 2.61, including Plaintiff, were vaccinated. Multiple emails and two in-person incidents during which Defendants sought to bring Plaintiff into compliance between Section 2.61's enactment on August 26, 2021 and Plaintiff's termination on September 21, 2021 (*see* AC ¶¶ 65, 68, 74) do not amount to "severe or pervasive" conduct such that a reasonable person could find an "objectively hostile or abusive work environment . . . ." *Moll*, 94 F.4th at 229 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Consequently, Plaintiff's hostile work environment claims premised on religious discrimination are dismissed.

## II. Federal & State Constitutional Claims

Plaintiff alleges a number of claims under the First, Fifth, and Fourteenth Amendments to the United States Constitution and under Article I §§ 6, 7, and 11 of the New York State

11

Constitution. (AC ¶¶ 132-169). Plaintiff does not oppose Defendants' motion with respect to those claims. (Pl. Opp. at p.1).

Accordingly, Plaintiff's state and federal constitutional claims are dismissed with prejudice.

### III. Plaintiff's Remaining Claims

Plaintiff's remaining claims are all premised on New York State law, alleging unlawful discrimination and retaliation on the basis of race, and aiding and abetting unlawful discrimination on the basis of religion and race. (AC ¶¶ 121-131). Plaintiff properly plead jurisdiction with respect to these claims pursuant to 28 U.S.C. § 1367. *See* 28 U.S.C. § 1367; (*see also* AC ¶ 4).

A district court may, however, "may decline to exercise supplemental jurisdiction over a claim [if it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). In particular, courts should generally forgo exercising supplemental jurisdiction when they dismiss all federal claims at the earliest stages of litigation. *Kaplan v. County of Orange*, 528 F. Supp.3d 141, 160 (S.D.N.Y. 2021) (quoting *Klein & Co. Futures Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006)). That is the exact situation at present, and therefore, the Court declines to retain jurisdiction over Plaintiff's remaining state law claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety.

Plaintiff's first and second causes of action, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and her sixth through ninth causes of action, asserting claims under the First, Fifth, and Fourteenth Amendments of the United States Constitution and Article I of the New York State Constitution, are dismissed with prejudice.

To the extent Plaintiff's third and fourth causes of action are premised on religious discrimination, they are also dismissed with prejudice. To the extent that Plaintiff's third and fourth causes of action are premised on racial discrimination, they are dismissed without prejudice to renew in New York State court. Similarly, Plaintiff's fifth cause of action is dismissed without prejudice to renew in New York State court.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 32. The Clerk of Court is further directed to terminate this action.

Dated: March 29, 2024  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge